UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

In re:  ) Case No. 13-13986
 )
DONATO CARILE and ) Chapter 7
ANITA M. CARILE, )
 ) Chief Judge Pat E. Morgenstern-Clarren
Debtors. )
 ) **MEMORANDUM OF OPINION**
 ) **AND ORDER**[1]

The debtors Donato and Anita Carile move under 11 U.S.C. § 522(f)(1)(A) to avoid a judgment lien filed by RBS Citizens against their residence on the ground that it impairs Anita's[2] homestead exemption. (Docket 7, 13). RBS, in opposition, contends that the debtors converted a non-exempt asset into an exempt asset (the homestead) with the intent to hinder, delay, or defraud RBS from recovering on its judgment lien. (Docket 10). And that, as a result, part of the lien cannot be avoided under 11 U.S.C. § 522(o). For the reasons stated below, the debtors' motion is granted in part, with the amount of the exemption reduced to reflect the challenged transfer.

**JURISDICTION**

Jurisdiction over this proceeding exists under 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K), and it is within the

---

[1] This opinion is not intended for publication, either electronic or in print.

[2] Because the debtors have the same last name, the court will refer to them by first names to avoid confusion.

court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

## THE ISSUE

The Bankruptcy Code permits a debtor to exempt, or remove, certain property from the bankruptcy estate so that it is not available to creditors. 11 U.S.C. § 522. In Ohio, a debtor may exempt up to $132,900.00[3] in her residence, with this limitation:

> For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in –
>
> > (1) real . . . property that the debtor uses as a residence . . .
>
> > \* \* \*
>
> > shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o). If an exemption is limited under § 522(o), the limited amount is used to calculate lien impairment under § 522(f). 11 U.S.C. § 522(f)(2)(A)(iii).

The debtors stipulated at trial that the only issue is intent: should the homestead exemption be reduced because the debtors acted with the intent to hinder, delay, or defraud RBS when Donato took $82,000.00 in non-exempt funds and converted the money into exempt equity

---

[3] *See* 11 U.S.C. § 522(b) (providing that a state may opt-out of the federal exemptions and require a debtor domiciled in that state to use the state exemptions); OHIO REV. CODE § 2329.662 (providing that Ohio has opted-out); OHIO REV. CODE § 2329.66(A)(1)(b) (setting the amount of the homestead exemption); OHIO REV. CODE § 2329.66(B) (providing for later adjustments of the exemption amount); and the Ohio Judicial Conference letter dated March 15, 2013 adjusting the amount of the Ohio homestead exemption to $132,900.00 as of April 1, 2013.

in the residence, thus reducing the amount of non-exempt assets available to satisfy RBS's judgment lien. If the debtors prevail, Anita retains her exemption in full. If RBS prevails, the exemption is reduced to $50,900.00 ($132,900.00 - $82,000.00 = $50,900.00).

## EVIDENTIARY HEARING

The court held an evidentiary hearing on November 1, 2013. At that time, the debtors presented their case through stipulated facts, exhibits, and their own testimony. RBS presented its case through stipulated facts, exhibits, and cross-examination of the debtors.

These findings of fact are based on that evidence and reflect the court's weighing of the evidence presented, including determining the credibility of the witnesses. "In doing so, the Court considered the witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re The V Companies*, 274 B.R. 721, 726 (Bankr. N.D. Ohio 2002). *See* FED. R. BANKR. P. 9014 (incorporating FED. R. BANKR. P. 7052).

## FACTS[4]

The relevant facts are not disputed, although the implications to be drawn from them are contested. The parties stipulated to these facts:

1. In 2004, 246 West Main Street LLC (West Main), an Ohio limited liability company owned 99% by Donato and 1% by Anita, purchased property in Elyria, Ohio (the apartment building). West Main financed the purchase with a loan from RBS in the original amount of $654,580.00, which loan was secured by a mortgage on the apartment building. The debtors personally guaranteed the loan.

---

[4] The parties stipulated to more facts than are stated here. *See* docket 41. The facts that are not included are not relevant to this dispute, although they may be relevant to RBS's motion to dismiss which is set for hearing on February 21, 2014. (Docket 33).
3

2. Donato owns a rental property in Strongsville, Ohio that, until January 2013, was free and clear of liens other than one in favor of Cuyahoga County for real estate taxes due and owing.

3. Anita owns the family residence in North Royalton, Ohio[5] which is encumbered by a mortgage in favor of RBS. The mortgage secures payment of a home equity line of credit owed by Anita to RBS.

4. These events took place in January 2013:

    a. On January 29, 2013, RBS obtained a judgment against West Main and the debtors on the apartment building loan obligation and filed judgment liens against the apartment building, the rental property, and the residence the same day.

    b. Donato obtained a line of credit from Fifth Third Bank (Northeastern Ohio) that was secured by a mortgage on the rental property.

5. In April 2013,[6] Donato used $82,000.00 from the Fifth Third Bank line of credit to pay down the principal amount owed by Anita to RBS on the line of credit secured by the residence.[7]

6. On February 8, 2013, Donato and Anita delivered to RBS a completed personal financial statement and an affidavit of financial condition. The affidavit did not disclose an Ohio

---

[5] The residence is located at 5479 Riverview Drive, North Royalton, Ohio, permanent parcel number 486-19-012.

[6] *See* Exh. 9.

[7] The parties did not raise any issues arising from the fact that one debtor owned and mortgaged the rental property, while the other debtor asserted the homestead exemption. The court will follow suit.

Catholic Credit Union account opened just days before the affidavit was signed, and into which the debtors later deposited the funds from their Dollar Bank account and their 2012 federal income tax return.

7. The residence is valued at $339,200.00 by the Cuyahoga County Auditor.

8. Anita claims an exemption in the residence of $ 132,900.00 under Ohio Revised Code § 2329.66(A).

9. As of June 1, 2013, RBS was owed $566,871.46 on the judgment lien.

10. As of June 1, 2013, Anita owed RBS $204,922.63 on the loan secured by the residence.

11. In April and May 2013, the debtors incurred debts to (a) paint the interior of the residence ($4,155.00), install new carpeting in the residence ($4,304.00), and to purchase tickets to Disney World ($2,427.80). Also, between January 1, 2013 and June 1, 2013, Anita contributed $16,686.00 to her retirement accounts.

Hearing testimony established these additional facts:

In 2005, Anita obtained a $323,000.00 line of credit from RBS which was secured by their residence. Anita and Donato both testified that they thought the line had to be repaid in 10 years, or in 2015. In 2013, they became concerned that the line of credit was coming due and they wanted to bring down the amount owed so that they could refinance it. On cross-examination when asked to review the actual contract language,[8] Anita acknowledged that the agreement states something different; i.e. that they could draw on the line of credit for 10 years, after which they had to *begin* repaying it. The repayment period then extended over 15 years.[9]

---

[8] Exhibit 19.

[9] Exh. 19.

To reduce the amount owed to RBS on the line of credit secured by the residence, in April 2013 Donato borrowed $82,000.00 against the Fifth Third line of credit and used those funds to pay down the RBS line of credit secured by their residence. The debtors used the funds in this fashion because they did not have any other source of funds to pay RBS. They undertook the painting and carpeting projects on the residence as routine maintenance.

After RBS obtained the judgment against the debtors and West Main, the debtors cooperated with RBS to maintain the apartment building and find a buyer for it; the June 2013 sale left them owing a large deficiency balance. They attempted to negotiate with RBS, first offering $50,000.00 as settlement in full. When RBS asked them to make a best and final offer, they responded with $60,000.00. RBS rejected the offer and the debtors filed their chapter 7 case on June 1, 2013.

## DISCUSSION

At the moment, RBS's judgment lien on the residence impairs Anita's homestead exemption; as a result, the debtors can avoid the lien in part under § 522(f). RBS seeks to reduce the amount of the debtors' homestead exemption under § 522(o), which would in turn limit the amount of its judgment lien that can be avoided. 11 U.S.C. §522(f) and (o).

The Bankruptcy Code provides that a debtor's exemption is limited if these requirements are met: (1) the value of the homestead increased; (2) the increase is attributable to the disposition of non-exempt assets; (3) the disposition occurred in the 10-year period ending on the date of the debtor's bankruptcy filing; and (4) the debtor disposed of the non-exempt assets "with the intent to hinder, delay, or defraud a creditor." 11 U.S.C. § 522(o). As noted above, the only disputed issue is whether the debtors used the $82,000.00 of non-exempt Fifth Third loan proceeds to pay down the home equity line of credit on the residence with the requisite intent.

6

RBS must prove that intent by a preponderance of the evidence. FED. R. BANKR. P. 4003(c); *In re Wengerd*, 453 B.R. 243, 246 (B.A.P. 6th Cir. 2011).

The Sixth Circuit has not ruled on whether § 522(o) requires proof that the debtor subjectively intended to hinder, delay or defraud the creditor by disposing of the non-exempt property or whether constructive fraud is sufficient. Other courts addressing the issue have noted that "intent to hinder, delay, or defraud" is "the historic language of fraudulent conveyances[.]" *In re Stanton*, 457 B.R. 80, 92 (Bankr. D. Nev. 2011). Because similar language is found in Bankruptcy Code § 548(a)(1)(A) and § 727(a)(2), courts look to cases interpreting those sections in deciding the nature of the intent required under § 522(o). *Addison v. Seaver (In re Addison)*, 540 F.3d 805, 811 (8th Cir. 2008) (collecting cases); *In re Stanton*, 457 B.R. at 92 (same). This court will do the same.

The Sixth Circuit has interpreted the similar language in §§ 548 and 727 to require proof that a debtor actually intended to hinder, delay or defraud the creditor.[10] *See Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (stating that § 727(a)(2)(A) requires "a subjective intent on the debtor's part to hinder, delay, or defraud a creditor"); *Brennan v. Slone (In re Fisher)*, 296 Fed. App'x 494, 501 (6th Cir. 2008) (unpublished opinion) (concluding that the bankruptcy court had properly distinguished between constructive fraud and the actual fraud required to challenge certain monetary transfers within the meaning of § 548(a)(1)(A)); *see also Buckeye Ret. Co. v. Swegan (In re Swegan)*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008) (stating that § 727(a)(2)(A) requires proof of an actual intent to deceive). Consistent with those cases,

---

[10] Section 548(a)(1)(A) provides for avoidance of a transfer made with "actual intent to hinder, delay, or defraud" and § 727(a)(2) provides for denial of discharge when a debtor transferred, removed, destroyed or concealed property with the "intent to hinder, delay, or defraud[.]" 11 U.S.C. § 548(a)(1)(A) and 11 U.S.C. § 727(a)(2).

7

RBS must prove here that the debtors acted with actual intent to defraud RBS. Under § 522(o), the mere fact that the debtors converted a non-exempt asset to an exempt one is generally not sufficient to prove fraudulent intent. *In re Addison*, 540 F.3d at 813. The creditor must show something more.

How, then, does a creditor prove the "something more" that changes a permitted act to a fraudulent one? There is rarely direct evidence of actual fraud, and so the requisite intent may be inferred from the circumstances surrounding the challenged transfer. *In re Kenney*, 227 F.3d at 684. *In re Addision*, the only published Circuit opinion addressing § 522(o), cited these factors as extrinsic evidence of fraud: (1) conduct intentionally designed to materially mislead or deceive creditors about the conversion of assets; (2) use of credit to buy exempt property; and (3) converting a "very great amount" of nonexempt property to exempt property. *In re Addison*, 540 F.3d at 815-16.

Courts also frequently cite to "badges of fraud," which are "circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 414 (6th Cir. 2005) (internal quotation marks and citation omitted). These badges of fraud include: (1) lack of adequate consideration for the transfer; (2) a close relationship between the parties; (3) retention of possession, benefit or use of the property; (4) the financial condition of the party before and after the transaction; (5) the conveyance of all the debtor's property; (6) the secrecy of the conveyance; (7) a pattern or series of transactions or course of conduct after incurring debt, the onset of financial difficulties, or the threat or pendency of a suit by creditors; and (8) the chronology of the events and transactions. *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 350 (Bankr. E.D. Tenn. 2006); *C&H Elec. v. Newell (In re Newell)*, 321 B.R. 885, 889-90 (Bankr. N.D. Ohio 2005).

8

In this case, RBS proved that the debtors acted with the requisite intent. The circumstances show that: (1) before Donato obtained the line of credit secured by the rental property, that property was encumbered only by real estate taxes owed; (2) Donato encumbered the rental property with a mortgage to Fifth Third Bank after RBS filed suit; (3) after RBS obtained judgment against both debtors, Donato used $82,000.00 from the Fifth Third Bank line of credit to pay down the RBS line of credit secured by the residence which had the effect of increasing the equity available for the homestead exemption; (4) the debtors retained both properties after that pay down; (5) the debtors' explanation that they made the payment because they were required to pay off the RBS line of credit in 2015 is inconsistent with the contract language; and (6) the debtors concealed assets by failing to disclose them on the sworn affidavit of financial condition given to RBS. As a result, § 522(o) applies and Anita's claimed $132,900.00 exemption in the residence is reduced by $82,000.00 to $50,900.00.

The debtors' motion requests avoidance of RBS's lien under § 522(f) based on the full exemption amount. However, based on the reduced exemption amount, the lien impairment under § 522(f) is calculated in this fashion[11]:

```
    $204,922.63 (mortgage on residence)
    $566,871.46 (RBS judgment lien)
 +  $50,900.00 (homestead exemption)
    $822,694.09
 -  $339,200.00 (value of the residence)
    $483,494.09 (extent to which RBS judgment
                        lien impairs the exemption)
```

---

[11] 11 U.S.C. § 522(f)(2)(A); *Brinley v. LPP Mortgage, Ltd. (In re Brinley)*, 403 F.3d 415, 421 (6th Cir. 2005).

Using this calculation, RBS's $566,871.46 judgment lien impairs the debtor's homestead exemption and is avoided in the amount of $483,494.09, with RBS retaining a lien in the amount of $83,377.37.

## **CONCLUSION**

For the reasons stated, RBS's opposition to the debtors' motion is sustained and the debtors' motion to avoid judgment lien is granted in part.

IT IS SO ORDERED.

_____
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge